IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT RINEHART, | ) | CASE NO. 5:07 cv 2461 |
| | ) | |
| Plaintiff, | ) | JUDGE ECONOMUS |
| | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **REPORT AND RECOMMENDATION** |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Robert Rinehart's application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Magistrate Judge recommends the decision of the Commissioner be AFFIRMED.

## I.  PROCEDURAL HISTORY

On May 4, 2005, Plaintiff filed an application for Disability Insurance benefits and Supplemental Security Income benefits, alleging a disability onset date of February 22, 2003 due to limitations related to herniated discs, lumbar degenerative disc disease, spinal stenosis,

1

obesity, and depression.  On February 21, 2007, Administrative Law Judge ("ALJ") Mark Carissimi determined Plaintiff had the residual functional capacity ("RFC") to perform a range of light work and, therefore, was not disabled (Tr. 20-26). On appeal, Plaintiff claims the ALJ's disability determination is not supported by substantial evidence.

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Born on December 9, 1971 (age 35 at the time of the ALJ's determination), Plaintiff is a "younger individual."  *See* 20 C.F.R. §§ 404.1563, 416. 963.  Plaintiff graduated high school and completed one year of college and has past relevant work as a shipping a receiving clerk (Tr. 330).

### B.  Medical Evidence

In March 2003, Bina Mehta, M.D., a specialist in physical medicine and rehabilitation, examined Plaintiff (Tr. 185-86).  Plaintiff complained of low back pain after a February 2003 work injury (Tr. 185).  Dr. Mehta reported that Plaintiff's range of motion was somewhat limited, but straight leg raising was negative, and gait, reflexes, sensation, and muscle strength were normal (Id.).  Dr. Mehta diagnosed lumbar strain/sprain and recommended an MRI scan, cortisone injections, and physical therapy (Tr. 186).

In July 2003, at the request of Dr. Mehta, physical therapist Aaron Kramer performed a functional capacity evaluation (Tr. 130).  Mr. Kramer concluded that Plaintiff could function at a light to medium physical demand level (Id.).  Mr. Kramer also concluded that Plaintiff had a significant trend toward "symptom disability behavior," and that Plaintiff was not performing to his maximum functional ability (Id.).

2

Later in July 2003, Dr. Mehta indicated that, based on the functional capacity evaluation, Plaintiff could return to work that involved occasional lifting up to 30 pounds, occasional bending, and frequent standing, walking, and sitting (Tr. 180).

Plaintiff underwent an MRI scan of his lower back in September 2003 (Tr. 177).  The MRI showed mild bulge/protrusion at the L3 disc with mild canal narrowing, mild to moderate central disc herniation/protrusion at L4 with mild canal narrowing, and moderate central and left paramedian disc herniation at L5 without much in the way of canal narrowing (Tr. 177).  In October, Dr. Mehta added the diagnoses of L4-L5 disc herniation and aggravation of pre-existing lumbar degenerative disc disease (Tr. 176).

In March 2004, Linda Moore, a certification of disability management specialist, performed an initial vocational rehabilitation assessment (Tr. 190-91).  Ms. Moore noted that Plaintiff had several barriers to successful participation in vocational services, including questionable motivation for returning to work (Tr. 191).  Later that month, Dr. Martinez, a physician, performed therapeutic nerve blocks to address Plaintiff's back pain (Tr. 192-93).

Also in March 2004, at the request of Jorge A. Martinez, M.D., Craig Wood, O.T.R., and Renee Brinker, P.T., performed a functional capacity evaluation (Tr. 201-04).  They concluded that Plaintiff should look for work at the medium physical demand level (Tr. 203).

In April 2004, James Bressi, D.O., a physician and pain management specialist, examined Plaintiff (Tr. 205-06).  Dr. Bressi stated that the plan was for Plaintiff to continue work conditioning and vocational rehabilitation services for return to work (Tr. 205).  Dr. Bressi also recommended a three-month unsupervised exercise program to keep Plaintiff "strengthened and in shape to return to remunerative activity and stay there" (Id.).  Dr. Bressi opined that

strengthening, continued weight loss, and adequate pain control would allow Plaintiff to successfully return to work (Tr. 206).

Later in April 2004, Mr. Wood wrote Dr. Bressi and stated that Plaintiff had completed a four-week work conditioning program, attending four hours per visit, three times per week (Tr. 196).  Mr. Wood indicated that Plaintiff tolerated a fairly aggressive program working in the medium physical demand level with work simulations (Id.).  Mr. Wood recommended that Plaintiff restrict his job search to work at the medium physical demand level with no more than occasional and non-repetitive stopping, crouching, climbing, kneeling, and bending (Id.).

In September 2004, a medical progress note from a pain management clinic indicated that Plaintiff was working full time as a painter inside houses (Tr. 239).  In October, Dr. Bressi administered two low back steroid injections (Tr. 236, 238).  In December, a medical progress note from a pain management clinic indicated that the injections were helpful for about a month (Tr. 234).  However, Plaintiff had shooting pain into his legs (Id.).  Plaintiff was waiting for the weather to get better so he could resume work as a roofer/painter (Id.).

In June 2005, a medical progress note from a pain management clinic indicated that Plaintiff had continued low back pain, but that his medications were helpful (Tr. 232).  Plaintiff reported that he had filed for disability and that he had not worked in over one year (Id.)  Plaintiff also reported that he might go back to school to try to get different work (Id.).

In August 2005, Darius Saghafi, M.D., performed a consultative examination (Tr. 207-09).  Plaintiff reported that he injured his back while picking up 55 pound bags of plastic beads (Tr. 207).  Dr. Saghafi reported that Plaintiff had positive straight leg testing, but normal muscle strength, sensation, and reflexes (Tr. 208-09).  Plaintiff had an antalgic gait on the right and

walked slowly, but had a good stride (Tr. 209).  Dr. Saghafi's impression was herniated disc syndrome (Id.).  He opined that Plaintiff could bend, lift 40 pounds if careful and with back support, and walk up to 100 yards at a time (Id.).  Later in August 2005, Dr. Willa Caldwell, a state agency medical consultant, reviewed the evidence of record and concluded that Plaintiff could perform medium work (Tr. 214-22).  Dr. Caldwell noted that Plaintiff had normal strength, but also had herniated disc syndrome, decreased range of motion in the spine and right hip, and an antalgic gait on the right (Tr. 215).  Plaintiff walked very slowly (Id.)

In September 2005, Dr. Bressi noted that Plaintiff went back to work for three weeks, but his back gave out (Tr. 231).  In December, a medical progress note from a pain management clinic indicated that Plaintiff had continued low back pain, but that his medications were helpful (Tr. 230).  Plaintiff was looking for work, but could not perform his previous job (Id.).

In January 2006, a low back MRI scan showed degenerative changes of the low back, including mild disc bulging at L3-L4 and L4-L5, resulting in mild canal narrowing without significant canal or foraminal stenosis, and disc herniation at L5-S1 resulting in mild encroachment upon the thecal sac (Tr. 240).

In March 2006, at the request of Dr. Bressi, Plaintiff was examined by neurosurgeon Georges Z. Markarian, M.D. (Tr. 241-42).  Dr. Markarian also examined Plaintiff's recent MRI scan (Tr. 241).  Dr. Markarian concluded that Plaintiff had no significant neurological deficits and that the MRI results did not explain his right leg pain (Id.).  Dr. Markarian recommended an EMG/nerve conduction study of Plaintiff's legs (Tr. 242).  Later in March 2006, a progress note from a pain management clinic indicated that Plaintiff had continued low back pain that went down his legs (Tr. 251).

Also in March 2006, Plaintiff was examined by Marian Chatterjee, Ph.D., Psychologist (Tr. 243-46).  The Beck Depression Inventory II index suggested depression in the severe range (Tr. 246).  Dr. Chatterjee opined that Plaintiff had depressive disorder, for which she recommended counseling, antidepressant medication, and vocational retraining (Id.).

In May 2006, Plaintiff underwent an EMG/nerve conduction study of his legs (Tr. 250). The study showed that Plaintiff had a combination of mild axonal peripheral neuropathy and mild chronic left L5 root denervation (Id.).

In a June 2006 letter to an attorney at the Bureau of Worker's Compensation, Dr. Bressi stated that Plaintiff's latest MRI showed a herniation at L5-S1 with spinal stenosis at multiple levels and a bulging disc at L3-L4 (Tr. 249).  Dr. Bressi added that Plaintiff would not be able to return to work until the pain from these findings was treated, and he requested permission to perform low back injections (Id.).  Dr. Bressi later performed a low back steroid injection (Tr. 248).  Plaintiff underwent two more low back steroid injections in July 2006 (Tr. 267, 269).

In September 2006, Plaintiff told Dr. Bressi that his pain level was at a three (Tr. 262). Plaintiff stated that he did well with sitting and lying down, but standing and walking were painful (Id.).  Dr. Bressi indicated that this problem was classic for spinal stenosis, which he diagnosed (Id.).  Dr. Bressi recommended weight loss and acupuncture, with possible implantation of a spinal cord stimulator (Id.).

From September 2006 through January 2007, Plaintiff participated in psychological counseling for his depression (Tr. 273-76).

In November 2006, Plaintiff had a discussion with a psychologist about possible implantation of a spinal cord stimulator (Tr. 253). Plaintiff expressed apprehension about the procedure, indicated that he had experienced fair success with his TENS unit, and stated that he would only consider surgery if it offered 100 percent relief of his chronic pain (Id.). The psychologist reported that Plaintiff's reasoning appeared to be based on his actual research of the procedure and information base, and was not related to unfounded fears or conjecture (Id.)

Later in November 2006, Dr. Bressi examined Plaintiff and found that his strength in his legs was 4/5, upper body strength was 5/5, reflexes and sensation were normal, and range of motion was limited (Tr. 255). Dr. Bressi asserted that worker's compensation refused to recognize Plaintiff's herniated disc at L3-L4 and L5-S1, which were apparent from his MRI (Tr. 254-55). Dr. Bressi concluded Plaintiff also had spinal stenosis (Tr. 255).

### C. Hearing Testimony

Dr. Malcolm Brahams, an orthopedic surgeon, testified as a medical expert ("ME") at Plaintiff's January 2007 administrative hearing (Tr. 316). Dr. Brahams opined that Plaintiff was an obese individual with back pain and depression, but that he could perform light work (Tr. 317-19). Dr. Brahams stated that Plaintiff's "principal problem" was obesity (Tr. 318). Dr. Brahams testified that Plaintiff's impairments did not meet or medically equal any listed impairment (Tr. 319). In particular, Dr. Brahams stated that Plaintiff did not meet or equal Listing 1.04(C) because Plaintiff did not have the necessary sensory, motor, and reflex changes (Id.). Dr. Brahams admitted that he did not review Plaintiff's MRI films, and agreed that Plaintiff had a disc protrusion "as recommended by Dr. Purdy" (Tr. 328).

Vocational expert ("VE") Kathleen Reis also testified at the January 2007 hearing (Tr. 328).  The ALJ asked the VE whether an individual of Plaintiff's age, education, and vocational background could perform any work if he were limited to routine light work that involved only occasional climbing of ramps and stairs, no climbing of ladders, ropes or scaffolds, only superficial interactions with others without negotiation or confrontation, and no high production quota work or piecework. (Tr. 331).  The VE listed the jobs of mailroom clerk (1,200 jobs in northeast Ohio), vending attendant (1,000 local jobs), and office helper (900 local jobs) as examples of jobs that such an individual would be able to perform (Tr. 331-32).

The ALJ's second hypothetical included an additional limitation of being off task 20 percent of the time in addition to regularly scheduled breaks because of pain (Tr. 332).  The VE testified that such an individual would not be able to perform any jobs (Id.).  On cross-examination, the VE testified that an individual limited as identified in the first hypothetical who was further limited to no production quotas would not be able to find available jobs (Tr. 333).

## III.  **DISABILITY STANDARD**

A claimant is entitled to receive Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20. C.F.R. §§ 404.1505, 416.905.

## IV.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* Indeed, the Commissioner's determination, if supported by substantial evidence, must stand, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387.  However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

# V. <u>ANALYSIS</u>

## A. The ALJ's Determination that Plaintiff Does Not Meet or Equal Listing § 1.04(A)

Plaintiff first claims the ALJ erred in his determination that Plaintiff does not meet or equal Listing § 1.04(A). The burden of proof for establishing that an impairment meets or equals the requirements of a listed impairment rests with the claimant. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has failed to meet this burden.

To meet a listed impairment, a claimant must satisfy all of the criteria in the listing. *See Berry v. Comm'r of Soc. Sec.,* 34 Fed. Appx. 202, 2002 WL 857743, *203 (6th Cir. May 3, 2002)(unpublished); *Sullivan. Zebley*, 493 U.S. 521, 530 (1990); *Hale v. Secretary of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987). To equal a listing, the claimant must present medical findings equal in severity to all the criteria for the most similar listed impairment. *See Sullivan*, 493 U.S. at 531; *see also* 20 C.F.R. § 416.926(a). Listing § 1.04 states:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.04. In addition to concluding it was appropriate to consider Plaintiff's spinal impairment under Listing § 1.04(A), the ALJ concluded Plaintiff's obesity could be an aggravating factor under §1.00(Q), which provides:

> Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.00(Q). The ALJ concluded that the combined effects of Plaintiff's obesity and his spinal impairment were not greater than the effects of these impairments separately and that the effect of Plaintiff's obesity did not result in an impairment or combination of impairments of listing level severity (Tr. 19). The ALJ noted that the record contains RFC assessments by state agency consultants demonstrating that these experts at least implicitly found Plaintiff does not meet or equal a listed impairment (Id.). The ALJ noted that the ME specifically testified that Plaintiff's impairments do not meet or equal a listed impairment. The ALJ also independently considered Plaintiff's impairments and concluded that Plaintiff does not meet or equal Listing 1.04(A). There is substantial evidence to support the ALJ's conclusion.

The A criteria of Listing § 1.04 requires evidence of nerve root compression characterized by decreased range of motion, motor loss, sensory or reflex loss, and positive straight-leg raising test. The record shows that in March 2003, straight leg raising tests were negative (Tr. 185). The September 2003 MRI on which Plaintiff relies in support of his argument that he meets or equals a listed impairment reflects degenerative changes with only moderate canal narrowing (Tr. 177). Plaintiff also points to records of positive straight leg

raising tests, limitation of flexion, and zero degree of extension in August 2005.  However, at the same examination, Dr. Saghafi found Plaintiff had normal strength and sensation, and no evidence of atrophy (Tr. 208-09, 213).  Dr. Saghafi concluded Plaintiff could lift 40 pounds with back support and walk up to 100 yards before taking a break (Id.)  Plaintiff next points to a January 2006 MRI, which revealed central focal disc herniation at L5-S1 (Tr. 240).  The MRI report does indeed indicate disc herniation at L5-S1, but it resulted in only mild encroachment upon the thecal sac (Id.)  The MRI also showed degenerative changes with mild bulging and mild canal narrowing, without significant canal or foraminal stenosis (Id.).  In a June 2006 letter, Dr. Bressi stated that Plaintiff's latest MRI showed a herniation at L5-S1 with spinal stenosis at multiple levels and disc bulging at L3-L4 (Tr. 249).  However, in November 2006, Dr. Bressi examined Plaintiff and found that although Plaintiff had 4/5 strength in his legs and limited range of motion, he had full upper body strength, normal reflexes, and normal sensation (Tr. 255).

Based on the above, the Magistrate Judge concludes there is substantial evidence to support the ALJ's determination that Plaintiff's impairments do not meet or equal Listing § 1.04 (A).

**B. The ALJ's Decision Not to Obtain the Testimony of a Mental Health Expert**

Plaintiff argues the ALJ erred by not having a mental health expert present to testify at the administrative hearing as to the impact of Plaintiff's mental impairment.

The purpose of the medical expert is to advise the ALJ on medical issues, answer specific questions about the claimant's impairments, the medical evidence, the application of the listings, and functional limitations based on the claimant's testimony and the record.  *See* 20 C.F.R. §

416.927(e)(2)(iii); *see* also HALLEX 1-2-5-32.  However, an ALJ's use of a medical expert is not mandatory unless the evaluation and interpretation of background medical test data is required or unless the use of a medical expert is ordered by the Appeals Council or a court. *See* HALLEX 1-2-534.

There is no evidence that the ALJ abused his broad discretion in deciding not to obtain the testimony of a mental health expert.  The ALJ found Plaintiff has a severe impairment of depressive disorder (Tr. 18).  The ALJ noted the evidence in the record pertaining to Plaintiff's mental impairment, which includes, in total, Dr. Chatterjee's March 2006 evaluation and Plaintiff's counseling with Dr. Dallara from September 2006 to January 2007 (Id.).  Dr. Chatterjee found Plaintiff met the diagnostic criteria for depressive disorder, and recommended he undergo counseling, evaluation for a suitable antidepressant, and possible vocational retraining (Id.).  Dr. Chatterjee also noted that Plaintiff drove to the evaluation and arrived on time, his speech was normal, he had good eye contact, he was alert and oriented, and his judgment was poor, but there were no symptoms of psychotic disorder (Tr. 243-46).  The ALJ also considered Plaintiff's report of his daily activities, which included walking his daughter down the driveway to meet her school bus, looking for work on the computer and sending out resumes, reading to his daughters and helping them with their homework, and fishing, although this activity was very limited (Tr. 20).  The ALJ found that from a mental standpoint, Plaintiff retains an RFC for routine work without high production quotas or piecework, and which does not require more than superficial interaction with co-workers and the public without negotiation or confrontation (Tr. 20).  A review of the ALJ's decision indicates that in making his mental RFC determination, he did not any evaluate any background medical test data.  And, the use of a

13

medical expert was not ordered by the Appeals Council or any court.  Thus, the ALJ's use a mental health expert was not mandatory in this case.  Accordingly, Plaintiff's argument that the ALJ erred by deciding not to obtain the testimony of a mental health expert is not well taken.

### C. The ALJ's Treatment of Plaintiff's Treating Doctors

Plaintiff next claims the ALJ violated the treating physician rule by giving little weight to the opinion of Plaintiff treating physician Dr. Bressi.  Specifically, Plaintiff challenges the ALJ's decision to discount Dr. Bressi's statement that Plaintiff would be unable to return to remunerative work activity until his pain was successfully treated.

The weighing of medical evidence is the province of the Commissioner.  Where there are conflicting medical opinions resulting from essentially the same objective medical data, it is the responsibility of the ALJ to resolve those conflicts. *See Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); *see also Bradley v. Secretary of Health & Human Servs.*, 862 F.2d 1224, 1227-28 (6th Cir. 1988).  The ALJ, however, is bound by the Social Security Regulations when doing so. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544, 545 (6th Cir. 2004).  The regulations clearly require a treating physician be given controlling weight should his opinion be well-supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2).  Indeed, the opinion of a treating physician is afforded greater weight than those of physicians who have examined the claimant on consultation or who have not examined the claimant at all. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)*; Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).  Although the regulations ensure an ALJ is not bound by the opinion of a claimant's treating physician, if he chooses to reject said opinion, the ALJ must articulate a good reason for

doing so. *See Shelman*, 821 F.2d at 321.  Specifically, if a treating source is not accorded controlling weight, the ALJ must apply certain factors – the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source.  Even still, the reasons offered for a credibility determination need not only comply with these factors, they must also be "good." 20 C.F.R. § 404.1527(d)(2); *see also Wilson*, 378 F.3d at 545.  Indeed, courts have consistently remanded Commissioner's decisions when they have failed to articulate "good reasons" for not crediting the opinion of a treating source as required by 20 C.F.R. § 404.1527(d)(2). *Id.*; *see also Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000); *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).

The ALJ observed that Dr. Bressi's opinion appeared "to be based on largely a recitation of the claimant's own symptoms and functional limitations rather than objective evidence supplied by Dr. Bressi" (Tr. 24).  The ALJ noted Dr. Bressi found Plaintiff had tenderness and restriction in extension and flexion, but also good strength, and intact reflexes and sensation (Id.).  The ALJ concluded Dr. Bressi's opinion was not entitled to controlling, persuasive, or probative weight because it was inconsistent with the other opinion evidence in the record (Id.).

The ALJ's opinion reflects that he considered a majority of the factors identified in 20 C.F.R. § 404.1527(d)(2) and reasonably determined Dr. Bressi's opinion was not entitled to controlling weight.  Even if a physician is classified as a treating physician, his opinion may be afforded little weight if the claimant fails to show his impairments are supported by contemporaneous, objective clinical or diagnostic findings. *See Ladwig v. Comm'r of Soc. Sec.*, No. 00-6585, 2002 WL 1491872 (6th Cir. July 11, 2002) (unpublished); *Kirk v. Secretary of*

*Health & Human Servs.*, 667 F.2d 538 (6th Cir. 1993); *Landsaw v. Secretary of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).  Moreover, if the treating physician's conclusions are based, in large part, on the claimant's subjective complaints of pain, the ALJ's decision to disregard the doctor's opinion is proper. *Id.*; *see also Young v. Secretary of Health & Human Servs.* 925 F.2d 146, 151 (6th Cir. 1990).  The record reflects that Dr. Bressi's opinion was inconsistent with, and contradicted by, other opinion evidence in the record, including the ME's opinion that Plaintiff can perform light work, and the opinions of both Dr. Mehta and a work conditioning program evaluator that Plaintiff can perform medium work.  Moreover, Dr. Bressi's opinion that Plaintiff cannot return to remunerative activity until his pain is treated appears to be an opinion on the issue of disability, and a statement by a physician as to whether a claimant is disabled or unable to work is not controlling. *See* 20 C.F.R. § 416.927(e)(1). Indeed, because a claimant's employability,  *i.e.*, whether he is disabled, is an issue ultimately reserved to the Commissioner, a physician's opinion on this topic is not entitled to any special significance. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997); *see also* 20 C.F.R. §§ 404.1527(e)(1)-(3).

Based upon the above, the Magistrate Judge concludes there is substantial evidence to support the ALJ's treatment of Dr. Bressi's opinion.

### D.  The ALJ's RFC Determination

Plaintiff argues that the RFC adopted by the ALJ is not supported by substantial evidence.  Plaintiff argues the ALJ improperly relied on the ME's testimony and the opinion of Dr. Mehta in reaching his RFC determination.

16

The ALJ concluded Plaintiff retains an RFC for routine light work, with no more than occasional climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; no high production quotas or piece work; and no more than superficial interaction with co-workers and the public without negotiation or confrontation (Tr. 20).  In making this finding, the ALJ considered Plaintiff's symptoms and the evidence in the record.  The ALJ noted that MRI scans in September 2003 found patent foramina at L4, but no definite nerve root impingement at the L5 level (Tr. 22).  He observed that a repeat MRI in January 2006 reported central disc herniation, but no definite foraminal narrowing and no severe or significant stenosis or narrowing at other levels (Id.).  The ALJ mentioned Plaintiff's May 2006 EMG/nerve conduction studies, which showed only mild neuropathy and no active denervation (Id.).  The ALJ noted that Dr. Mehta's evaluation showed mostly normal results, despite tenderness and limitations in reflexes and extension (Id.).  The ALJ also noted Dr. Saghafi's mostly normal consultative examination in August 2005 and Plaintiff's lack of emergency room visits or hospitalizations.  The ALJ observed that consistent with a finding of the ability to perform light work, Dr. Mehta found Plaintiff could occasionally lift 30 pounds, and frequently stand, sit and walk (Tr. 24).  The ALJ also noted Plaintiff's April 2004 work conditioning program, at which it was concluded he should look for work at the medium demand level (Tr. 25).  Finally, the ALJ noted that the state agency consultants opined Plaintiff could perform medium work (Id.).

A review of the ALJ's opinion reflects that he considered the record as a whole, and gave a thorough and adequate explanation for his RFC determination.  With respect to Dr. Mehta, the record shows he first saw Plaintiff in March 2003.  He found tenderness and zero flexion, but normal sensation, strength, and negative straight leg raising (Tr. 185).  He requested that an MRI

17

scan be done (Id.).  Dr. Mehta opined in July 2003 that Plaintiff could occasionally lift 30 pounds, frequently lift 15 pounds, occasionally bend, and frequently stand, sit, and walk (Tr. 180).  An MRI was done in September 2003, and showed disc degenerative, mild bulge/protrusion of the L3 disc with mild canal narrowing, and moderate herniation/protrusion of the L4 and L5 discs with mild canal narrowing (Tr. 177).  In October 2003, Dr. Mehta opined that Plaintiff's worker's compensation claim should include disc herniation and aggravation of pre-existing lumbar degenerative disc disease (Tr. 176).  He explained that the symptoms and objective findings and MRI supported these additional conditions (Id.).  The ALJ's consideration of Dr. Mehta's opinion does not seem to be in error.  Dr. Mehta did not offer a changed opinion of Plaintiff's limitations after the MRI results were in.  And, although Dr. Mehta's opinion was made prior to the MRI, Plaintiff completed a work conditioning program after the MRI scan in April 2004, and the program evaluator concluded Plaintiff should look for medium level work.

With respect to the ME, Plaintiff complains he denied that Plaintiff has a herniated disc, despite clear evidence of a herniation in the record.  The MRI report indicated Plaintiff had moderate "herniation/protrusion" (Tr. 177).  The ME testified that he read the MRI report to suggest more of a protrusion rather than a herniation, yet he did not actually review the MRI films himself (Tr. 327).  Although Plaintiff raises reasonable concerns about the ME's interpretation of the MRI report without actual review of the films, a review of the hearing transcript shows the ME did not base his opinion that Plaintiff can perform light work on his interpretation of the MRI results alone.  The ME reviewed the record as a whole, including Plaintiff's August 2005 RFC evaluation, August 2005 neurological examination, and May 2006 EMG examination.  The ME's conclusion that Plaintiff can perform light work is consistent with

18

the opinion of Plaintiff's April 2004 work conditioning evaluator, Dr. Saghafi's August 2005 opinion, and the state agency consultant's August 2005 RFC assessment.  Medical expert testimony consistent with the evidence of record represents substantial evidence to support the Commissioner's decision. *See Baker v. Shalala,* 40 F.3d 789, 794 (6th Cir. 1994); *Atterberry v. Secretary of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989).

A review of the ALJ's RFC assessment and the record demonstrates that the ALJ did not improperly rely on the opinions of Dr. Mehta and the ME in making his RFC determination.  In addition to the opinions of Dr. Mehta and the ME, the ALJ's RFC assessment shows he considered Plaintiff's MRI scans and EMG/nerve conduction studies, the July 2003 RFC evaluation, Dr. Saghafi's August 2005 consultative evaluation, Plaintiff's completion of a work conditioning program in April 2004, and the state agency consultant's RFC evaluation.  Based on his review of the record as a whole, the ALJ determined Plaintiff retains an RFC for a range of light work.  There is substantial evidence to support the ALJ's RFC assessment.

### E.  The ALJ's Reliance on the Testimony of the Vocational Expert

Plaintiff next claims the ALJ improperly relied on the testimony of the VE in response to an inaccurate hypothetical question.

Once it is determined a claimant does not have the RFC to perform his past relevant work, the burden shifts to the Commissioner to show the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy. *See Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001)*; Cole v. Secretary of Health & Human Servs.*, 829 F.2d 768, 771 (6th Cir. 1987).  "To meet this burden, there must be a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v.*

*Secretary of Health & Human Servs.*, 820 F.2d 777,779 (6th Cir. 1987).  The testimony of a vocational expert in response to a hypothetical question may serve as substantial evidence of a claimant's vocational qualifications to perform certain jobs. *See id.*  However, the hypothetical question posed to a vocational expert must accurately portray a claimant's physical and mental state. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).  Should the hypothetical fail to accurately describe a claimant's physical and mental impairments, the defect is fatal to both the vocational expert's testimony and the ALJ's reliance upon that testimony. *See id*.

The ALJ asked the VE whether an individual of Plaintiff's age, education, and vocational background could perform any work if he were limited to routine light work that involved only occasional climbing of ramps and stairs, no climbing of ladders, ropes or scaffolds, only superficial interactions with others without negotiation or confrontation, and no high production quota work or piecework. (Tr. 331).  This hypothetical question accurately reflects the ALJ's RFC determination, which the Magistrate Judge has concluded is supported by substantial evidence.  Accordingly, Plaintiff's argument that the ALJ posed an inaccurate hypothetical question to the VE is not well taken.  In response to the ALJ's hypothetical, the VE listed the jobs of mailroom clerk (1,200 jobs in northeast Ohio), vending attendant (1,000 local jobs), and office helper (900 local jobs) as examples of jobs that such an individual would be able to perform (Tr. 331-32).  The VE's testimony in response to the ALJ's hypothetical question, which accurately reflected Plaintiff's physical and mental impairments, serves as substantial evidence of Plaintiff's vocational qualifications to perform jobs existing in significant numbers in the national economy.

## VI.  <u>DECISION</u>

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence.  Accordingly, the Magistrate Judge recommends the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: <u>March 28, 2008</u>

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).